UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| MARK A. HODGE, | ) Case No.: 1:19-cv-00341-LJO-SAB (PC) |
|---|---|
| Plaintiff, | ) |
| v. | ) FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF DUE PROCESS CLAIM AND AUTHORIZING SERVICE OF OTHER CLAIMS |
| C. SANTIESTEBAN, et.al., | ) |
| Defendants. | ) [ECF No. 8] |

Plaintiff Mark A. Hodge is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Plaintiff's first amended complaint, filed April 22, 2019.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

///

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in the first amended complaint as true *only* for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

On June 5, 2016, officers Magallanes, Santiesteban and Bruno elected to let out five porters during cell feeding instead of the usual four inmates. Usually during cell feeding only four inmates are let out of work, two for the top tier and two for the bottom. They never let us out to work on a day off. On this particular day, officers Magallanes, Santiesteban and Bruno let inmate Shamburger out on his off day, and he immediately started arguing with Plaintiff to "take it back in my cell in a loud voice catching all the above-mentioned officers attention." Shamburger specifically stated, "Hodge lock it up, I don't need you out here today." Plaintiff then stated, "its my work day I'm supposed to be out today." As soon as Shamburger told Plaintiff to lock it up, officers Magallanes, Santiesteban and Bruno started laughing which caused Shamburger to become more aggressive in tone and eventually in action. Plaintiff told Shamburger that it was his off day, and officers Magallanes, Santiesteban and

2

Bruno then made noises like "ooohhh" in an instigating way. Everyone knows that inmate Shamburger is one of the main leaders of the Black Guerrilla Family, and he was one of many inmates that just got out of the security housing unit for being a violent validated gang member. There was a rumor that Shamburger had killed before while incarcerated.

Shamburger then told Plaintiff, "I'll deal with you later," and Plaintiff waited until he walked out of earshot and asked the three officers if he could "just go in to avoid him" and they said "no its your work day." Plaintiff assisted in passing out the food trays through the food ports. The officers and inmate porter's then typically go back together to "A" section to prepare to pick up the food trays, but something was different this time. Magallanes, the tower officers, was looking toward "C" section at officers Santiesteban and Bruno who unusually stayed behind in "C" section. Plaintiff felt there was something wrong. Shamburger looked calm, then suddenly he stabbed Plaintiff in the upper left back, making a loud thump like noise, as Plaintiff yelped loudly in pain altering the officers. Plaintiff tried to defend himself, but it was not successful because Shamburger struck Plaintiff's left bicep while backing up, and Bruno and Santiesteban saw it happen because they were coming around the corner. Shamburger then reached up again with the weapon in plain view forcefully coming down with it in his right hand aiming for Plaintiff's left eye, and Plaintiff raised his left hand and both of them fell to the ground. Plaintiff was able to escape and ran toward Bruno.

Bruno told Santiesteban to not let Shamburger get rid of the weapon because he had got back up. I immediately laid down at the feet of Bruno. In both of the reports, Bruno and Santiesteban stated they were initially altered by a noise and commotion which was the initial blow to Plaintiff. After the incident, Shamburger had the inmate manufactured weapon in plain view while officer Santiesteban was standing about five feet from his, and Shamburger walked over to cell number 104 and slid it under the door. Neither Bruno or Santiesteban mentioned the weapon or how Shamburger slid it under the cell door. In addition, cell 104 was not searched until the next day.

A responding officer told Sergeant Sherman that Plaintiff's left hand was bleeding. Then, officers Santiesteban and Magallanes stated, "No, Hodge was the one battering Shamburger." Plaintiff immediately stated, "No I didn't, he stabbed me." Plaintiff asked officer Bruno to speak up, but she said she "didn't see nothing." Sergeant Sherman then said, "who you think I'm going to believe, you

[or] my officers." The usual policy, practice and procedure is to call medical staff, the Investigative Service Unit (ISU), and Institutional Gang Investigators (IGI), immediately to the incident before anyone is allowed to be removed from the scene. Officers Santiesteban and Magallanes deception in telling Sergeant Sherman that Plaintiff was the one who battered inmate Shamburger was to prevent them from calling ISU or IGI.

After the incident, Sergeant Sherman inspected the inside palm of Plaintiff's left hand and saw that it was bleeding. Sherman then elected to move Plaintiff to the 3A program office one man holding cell. If Sherman had elected to call Licensed Vocational Nurse (LVN) Patterson to the scene, Plaintiff would have been sent immediately to the medical department.

When LVN Patterson began to examine Plaintiff, Sherman interrupted her from inspecting Plaintiff's entire body. Plaintiff had to convince her to mark his left hand wound as a stab wound. Sherman convicted her to mark Plaintiff's left bicep stab wound as only a scratch. Sherman did not allow LVN Patterson to examine his entire body, including his back, and the stab wound on his back was not discovered until the next day.

When an officer passed the holding cell, he noticed that Plaintiff was standing in blood, and he called LVN Patterson back and Sherman then allowed her to move Plaintiff to the medical clinic one man holding cell. Approximately an hour later, Plaintiff was transferred to the main clinic facility and Registered Nurse Rodriguez said both wounds were stab punctures and he was sent immediately to the main hospital at the facility. After Dr. Aye examined Plaintiff, he was sent to Mercy Hospital in Bakersfield where the stab wound on his upper left back was discovered. Plaintiff remained at Mercy Hospital for three days.

On June 20, 2016, Plaintiff received rules violation report (RVR) number 237025 and learned that the three relevant officers conspired to hide their incident reports. In addition, officer Bruno did not write a report further hiding the truth. However, officer Magallanes and Santiesteban reported that they did not see Plaintiff get stabbed, but both officers signed their reports as witnessing and primary officers.

Lieutenant J. Amaya authored RVR 237025, in which Plaintiff was charged with battery involving serious bodily injury. However, Lieutenant Amaya was not present during the incident, and

4

had no involvement in it, but signed as the reporting employee in violation of California Code of Regulations, Title 15, section 3286.

On June 20, 2016, Lieutenant Ruiz investigated the RVR and found that it was not credible due to the confidential information Plaintiff provided corroborating the medical reports of him being stabbed in the back, left bicep, and left hand. Ruiz then encouraged Plaintiff to go sensitive needs yard because he would no longer be safe on the mainline yard. Plaintiff indicated that the RVR was illegally written by Lieutenant Amaya because he signed as the reporting employee and did not witness the incident. Plaintiff immediately told Ruiz that he wanted to go sensitive needs yard due to his life being in danger on the mainline.

Ten days later, on June 30, 2016, RVR 237025 was dismissed by Captain J. Gallagher, and he ordered all supplemental reports destroyed.

Lieutenant Amaya had until July 20, 2016, to re-hear/re-issue a subsequent RVR. On July 25, 2016, Plaintiff filed an inmate appeal requesting that no reprisals be taken against him.

Then, on August 7, 2016, Lieutenant Amaya wrote another RVR number 722827, but he changed some of the critical details regarding the incident. There was no mention that RVR 722827 was a rehearing or reissue of RVR 237025. A hearing was held, and Plaintiff was found guilty of fighting. After Plaintiff filed two inmate appeals, RVR 722827 was dismissed in the interest of justice.

## III.

## DISCUSSION

### A. Failure to Protect

Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. Farmer, 511 U.S. at 833-34 (quotation marks omitted); Cortez v. Skol, 776 F.3d 1046, 1050 (9th Cir. 2015); Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir. 2009); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled

that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. Farmer, 511 U.S. at 834, 841 (quotations omitted); Clem, 566 F.3d at 1181; Hearns, 413 F.3d at 1040.

Plaintiff's allegation that on June 5, 2016, Defendants Santiesteban, Magallanes and Bruno let inmate Shamburger out of his cell who was not scheduled to work that day and instigated him to attack Plaintiff and did not assist him during the subsequent attack, is sufficient to state a cognizable failure to protect claim against these Defendants.

**B.     Conspiracy**

In the context of conspiracy claims brought pursuant to section 1983, a complaint must "allege [some] facts to support the existence of a conspiracy among the defendants." Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 626 (9th Cir. 1988). Plaintiff must allege that defendants conspired or acted jointly in concert and that some overt act was done in furtherance of the conspiracy. Sykes v. California, 497 F.2d 197, 200 (9th Cir. 1974).

A conspiracy claim brought under section 1983 requires proof of "an agreement or meeting of the minds to violate constitutional rights," Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Franklin, 312 F.3d at 441 (quoting United Steel Workers of Am., 865 F.2d at 1541).

Plaintiff's allegations are sufficient, at the pleading stage, to state a cognizable claim that Defendants Santiesteban, Magallanes and Bruno conspired to fail to protect him from inmate Shamburger.

**C.     False Allegations**

Plaintiff contends that his rights under the Fourteenth Amendment were violated because Defendants Santiesteban, Magallanes and Bruno falsely reported that inmate Shamburger did not use a

weapon during the incident which led to issuance of a rules violation report. Plaintiff fails to state a cognizable constitutional claim. The issuance of a false charge does not, in and of itself, support a claim under section 1983. See, e.g., Ellis v. Foulk, No. 14-cv-0802 AC P, 2014 WL 4676530, at *2 (E.D. Cal. Sept. 18, 2014) ("Plaintiff's protection from the arbitrary action of prison officials lies in 'the procedural due process requirements as set forth in Wolff v. McDonnell.'") (citing Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984)); Solomon v. Meyer, No. 11-cv-02827-JST (PR), 2014 WL 294576, at *2 (N.D. Cal. Jan. 27, 2014) ("[T]here is no constitutionally protected right to be free from false disciplinary charges.") (citing Chavira v. Rankin, No. C 11-5730 CW (PR), 2012 WL 5914913, at *1 (N.D. Cal. Nov. 26, 2012) ("The Constitution demands due process, not error-free decision-making.")); Johnson v. Felker, No. 1:12-cv-02719 GEB KJN (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a [rules violation] report does not give rise to a claim under section 1983.") (citing Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) and Freeman v. Rideout, 808 F.2d 949, 951-53 (2d. Cir. 1986)); Canovas v. California Dept. of Corrections, No. 2:14-cv-2004 KJN P, 2014 WL 5699750, at *2 n.2 (E.D. Cal. Oct. 30, 2014). Accordingly, Plaintiff fails to state a cognizable constitutional claim based on his claim that Defendants filed false charges against him.

**D.     Retaliation**

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. Grenning v. Klemme, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014). Mere verbal harassment or abuse does not violate the Constitution and, thus, does not give rise to a claim for relief

7

under 42 U.S.C. § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). In addition, threats do not rise to the level of a constitutional violation. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

Plaintiff's allegation that Lieutenant Amaya re-issued the rules violation report for fighting with another inmate because Plaintiff filed an inmate grievance requesting no reprisal for having the guilty finding of the initial violation report overturned, is sufficient to give rise to a cognizable claim for retaliation.

**E.    Deliberate Indifference to Serious Medical Need**

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

"A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference." Snow, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Wilhelm, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks

omitted). In addition, mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; Snow, 681 F.3d at 987-88; Wilhelm, 680 F.3d at 1122 ("The deliberate indifference doctrine is limited in scope.").

Liberally construing Plaintiff's allegations, Plaintiff states a cognizable claim for deliberate indifference against Defendant Sherman.

### F. Rules Violation Reports/Due Process

"When protected interests are implicated, the right to some kind of prior hearing is paramount…." Neal v. Shimoda, 131 F.3d 818, 830 (9th Cir. 1997) (quoting Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569-70 (1972)). However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other grounds by Sandin v. Connor, 515 U.S. 472 (1995). In addition, "some evidence" must support the decision of the hearing officer, Superintendent v. Hill, 472 U.S. 445, 455 (1985), and the evidence must have some indicia of reliability, Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987). The "some evidence" standard is not particularly stringent and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached. . . ." Hill, 472 U.S. at 455-56.

Here, Plaintiff contends that the initial rules violation report was false because he was not the aggressor in the physical altercation with inmate Shamburger but rather the victim. Plaintiff also contends that the second rules violation report was illegally issued because the initial violation was dismissed in all respects and a reissue or rehearing was never ordered by the CDO. Even assuming, without deciding, that some procedural defect occurred at Plaintiff's initial and/or second rules violation hearings, it is clear that both rules violation reports were ultimately dismissed, and Plaintiff has failed to demonstrate any resulting harm. Plaintiff contends that he suffered actual injury because he was labeled as a gang member, was removed from his education course, and spent six months in segregation awaiting hearing on the rule violations. However, there is no constitutional right to education in prison. Rhodes v. Chapman, 452 U.S. 337, 348 (1981). Plaintiff also has no due process right in a specific classification. Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976). Moreover, Plaintiff fails to demonstrate that placement in administrative segregation imposed "atypical and significant hardship" to him "in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

In addition, Plaintiff's due process allegations are based, at least in part, on violations of prison regulations. However, California regulations do not dictate the outcome of the federal due process analysis. Nor do the Title 15 regulations governing the conduct of prison officials entitled an inmate to constitutional relief. See Samson v. City of Bainbridge Island, 683 F.3d 1051, 1060 (9th Cir. 2012) ("[N]ot every violation of state law amounts to an infringement of constitutional rights," and "§ 1983 does not provide redress in federal court for violations of state law."); see also Vasquez v. Tate, No. 1:10-cv-01876-JLT (PC), 2012 WL 6738167, at *9 (E.D. Cal. Dec. 28, 2012); Davis v. Powell, 901 F.Supp.2d 1196, 1211 (S.D. Cal. 2012). Accordingly, Plaintiff fails to state a cognizable procedural due process claim.

## IV.

## RECOMMENDATIONS

Based on the foregoing, the Court finds that Plaintiff states a cognizable claim against Defendants Santiesteban, Magallanes, and Bruno for failure to protect and conspiring to fail to protect Plaintiff from inmate Shamburger, a cognizable claim against Defendant Amaya for retaliation, and a cognizable claim against Defendant Sherman for deliberate indifference to a serious medical need.

However, Plaintiff fails to state a cognizable due process violation and the claim should be dismissed, without further leave to amend. The Court has previously provided Plaintiff with the applicable legal standards and granted leave to amend to cure the deficiencies. Upon review of the allegations in the complaint and first amended complaint, it appears that further leave to amend would be futile.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **May 8, 2019**

UNITED STATES MAGISTRATE JUDGE